# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| CARLOS ARMANDO AREVALO-GUASCO, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>SHERIFF JONATHON W. HORTON, )<br>)<br>Respondent. | Case No.: 4:19-cv-01478-MHH-JHE |

## MEMORANDUM OPINION AND ORDER

Petitioner Carols Armando Arevalo-Guasco, an alien detainee at the Etowah County Detention Center in Gadsden, Alabama, has requested a bond hearing. He has been detained since December of 2017 while he pursues his effort to receive relief from a removal order that would return him to his native country, Ecuador. Mr. Arevalo-Guasco last had a bond hearing on February 2, 2018. (Doc. 6-1, p. 2, ¶¶ 13-14). Mr. Arevalo-Guasco's request for relief from his removal order is pending in the Second Circuit Court of Appeals. (Doc. 22-2). The Second Circuit recently issued an order staying those proceedings while the Court of Appeals awaits an upcoming Supreme Court decision that may be relevant to Mr. Arevalo-Guasco's appeal. Mr. Arevalo-Guasco's request for a bond hearing is before this Court on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1).

After finding that Mr. Arevalo-Guasco is detained pursuant to 8 U.S.C. § 1231, the magistrate judge assigned to this case recommended that the Court deny Mr. Arevalo-Guasco's habeas petition as premature. Mr. Arevalo-Guasco has objected to that recommendation, arguing, among other things, that he is detained pursuant to 8 U.S.C. § 1226 so that the Court should consider his habeas petition in the context of a § 1226 detention. (Docs. 14, 16, 18, 19, 21). Sheriff Horton has asked the Court to overrule Mr. Arevalo-Guasco's objections. (Docs. 17, 20).[1]

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district judge must "make a *de novo* determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* FED. R. CRIM. P. 59(b)(3) ("The district judge must consider *de novo* any objection to the magistrate judge's recommendation."). A district court's obligation to "'make a de novo *determination* of those portions of the report or specified proposed findings or recommendations to which objection is made,'" *United States v. Raddatz*, 447 U.S. 667, 673 (1980)

---

[1] Mr. Arevalo-Guasco recently filed a motion for preliminary injunction in which he reiterates his objections to the recommendation for dismissal of his habeas petition, and Sheriff Horton has opposed Mr. Arevalo-Guasco's motion. (Docs. 22, 23). The analysis in this opinion disposes of the parties' arguments.

(quoting 28 U.S.C. § 636(b)(1)), requires a district judge to "'give *fresh consideration* to those issues to which specific objection has been made by a party,'" 447 U.S. at 675 (quoting House Report No. 94-1609, p. 3 (1976)) (emphasis in *Raddatz*).

Mr. Arevalo-Guasco's objection concerning the statute under which he is detained is well-taken. Section 1226 governs detention of aliens "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1231 establishes a 90-day removal period "when an alien is ordered removed" from the United States. 8 U.S.C. § 1231.

Recently, the United States Supreme Court stated that "Section 1226 generally governs the process of arresting and detaining" deportable aliens "pending their removal." *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018).[2] In other words, § 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." 138 S. Ct. at 838. The Supreme Court explained that detention during removal proceedings "gives

---

[2] The classes of deportable aliens that the Supreme Court considered in *Jennings* were "aliens who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission." *Jennings*, 138 S. Ct. at 837. Detention proceedings for the former group of aliens fall under § 1226(a), and detention proceedings for the latter group of aliens fall under § 1226(c). Mr. Arevalo-Guasco seeks a detention hearing under § 1226(a) because he entered the United States without permission and therefore was "inadmissible at the time of entry."

3

immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made." 138 S. Ct. at 836.[3] Section 1231, on the other hand, gives the Attorney General 90 days in which "to complete removal" once the Attorney General is authorized to remove an alien and mandates, under § 1231(a)(2), that an alien "must be detained during that [90-day] period." 138 S. Ct. at 843.

Mr. Rodriguez, the detainee in *Jennings*, was in a procedural posture like Mr. Arevalo-Guasco's in this case. The Government had detained him pursuant to § 1226 during removal proceedings. Then,

> an Immigration Judge ordered Rodriguez deported to Mexico. Rodriguez chose to appeal that decision to the Board of Immigration Appeals, but five months later the Board agreed that Rodriguez was subject to mandatory removal. Once again, Rodriguez chose to seek further review, this time petitioning the Court of Appeals for the Ninth Circuit for review of the Board's decision.
>
> In May 2007, while Rodriguez was still litigating his removal in the Court of Appeals, he filed a habeas petition in the District Court for the Central District of California, alleging that he was entitled to a bond hearing to determine whether his continued detention was justified.

---

[3] *Jennings* concerns two types of detention: detention while an alien applies for admission to the United States and detention during removal proceedings, including appeals. The former is governed by 8 U.S.C. § 1225 and the latter by 8 U.S.C. § 1226. *Jennings*, 138 S. Ct. at 837.

*Jennings*, 138 S. Ct. at 838. Throughout, the Supreme Court regarded Mr. Rodriguez as detained pursuant to § 1226(c) because he was in the process of challenging his removal order, so that he was not subject to a final order of removal.

By analogy, ICE arrested Mr. Arevalo-Guasco in December of 2017 and detained him pursuant to § 1226. In July of 2018, an Immigration Judge denied Mr. Arevalo-Guasco's request for cancellation of removal, and in May of 2019, the Board of Immigration Appeals dismissed Mr. Arevalo-Guasco's challenge to the Immigration Judge's decision. (Doc. 6-1, pp. 2-3). On June 13, 2019, Mr. Arevalo-Guasco filed a petition for review in the Second Circuit Court of Appeals. While his request for review was pending in the Second Circuit, Mr. Arevalo-Guasco's removal initially was suspended by a forbearance stay, a stay by circuit policy, not by court order. (Doc. 6-1, p. 3). While the forbearance stay was in place, Mr. Arevalo-Guasco filed this habeas action. (Doc. 1). On October 5, 2020, the Second Circuit Court of Appeals issued an order staying Mr. Arevalo-Guasco's removal "pending consideration of his petition for review." (Doc. 22-1, p. 2). Throughout, Mr. Arevalo-Guasco has been detained. Under *Jennings*, that detention is pursuant to § 1226.

Relying on the Eleventh Circuit's decision in *De La Teja v. United States*, 321 F.3d 1357 (11th Cir. 2003), the magistrate judge held that Mr. Arevalo-Guasco is detained under § 1231. (Doc. 14, p. 4, n. 3 (citing Doc. 6, pp. 4-5)). The detainee

in *De La Teja* was in different position from Mr. Arevalo-Guasco and from Mr. Rodriguez. While Mr. De La Teja was serving a criminal sentence for cocaine distribution, INS, the United States Immigration and Naturalization Service, charged Mr. De La Teja as an alien inadmissible to the United States because of his drug conviction. When Mr. De La Teja completed his criminal sentence, INS detained Mr. De La Teja pursuant to 8 U.S.C. § 1226(c). Before his removal proceedings began, Mr. De La Teja filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. *De La Teja*, 321 F.3d at 1259-60. In his petition, Mr. De La Teja challenged the constitutionality of § 1226(c). Foreshadowing the Supreme Court's analysis in *Jennings*, the district court held that § 1226(c) does not violate the Due Process Clause of the Fifth Amendment because "1226(c) was designed for the legitimate governmental purpose of ensuring that an alien can be physically located at the conclusion of removal proceedings." *De La Teja*, 321 F.3d at 1360. Mr. De La Teja appealed the denial of his § 2241 habeas petition before his removal proceedings began. *De La Teja*, 321 F.3d at 1360. Thus, at the beginning of his appeal, he was in INS custody pursuant to § 1226(c).

The status of Mr. De La Teja's detention changed while his habeas appeal was pending. While his appeal was pending, and while he was in INS custody pursuant to § 1226(c), INS presented the administrative charge against Mr. De La Teja to an immigration judge. Four months before the Eleventh Circuit Court of Appeals

issued its opinion concerning Mr. De La Teja's habeas petition, an Immigration Court issued an order of removal. "Notably, the appellant did not file an appeal with the Board of Immigration Appeals. Accordingly, the order of removal became final on November 12, 2002," three months before the Eleventh Circuit Court of Appeals issued its opinion in Mr. De La Teja's habeas matter. *De La Teja*, 321 F.3d at 1360. Because Mr. De La Teja's order of removal became final on November 12, 2002, the status of his INS detention changed on that date. As of November 12, 2002, the Attorney General had 90 days in which to remove Mr. De La Teja from the United States, and, per § 1231(a)(2), Mr. De La Teja "must be detained during that [90-day] period." *Jennings*, 138 S. Ct. at 843. Because Mr. De La Teja was detained pursuant to § 1231 rather than § 1226 when the Eleventh Circuit Court of Appeals issued its decision in Mr. De La Teja's case on February 21, 2003, Mr. De La Teja's Fifth Amendment challenge to § 1226 became moot. *De La Teja*, 321 F.3d at 1363.

In its opinion in *De La Teja*, the Eleventh Circuit carefully explained the significance of the change in Mr. De La Teja's status. The Eleventh Circuit stated:

> At the time that he filed his habeas petition, De La Teja was being detained pursuant to § 1226(c) pending a final decision on the INS's removal petition. However, the circumstances of this case have changed dramatically since then. On October 10, 2002, an Immigration Judge found De La Teja removable as charged in a decision which became a final removal order when De La Teja did not appeal that decision to the Board of Immigration Appeals by November 12, 2002. *See* 8 C.F.R. § 241.1(c). The government avers in a supplemental pleading and appellant does not dispute that he did not appeal the

7

> judgment of the Immigration Judge, and accordingly his removal order became final on November 12, 2002.
>
> This fundamentally changes the procedural posture of the case. Because a final removal order has been entered, De La Teja is no longer being detained pursuant to § 1226(c), which governs *only* detention prior to a final removal order. Instead, he is being detained now pursuant to a wholly different statute, INA § 241(a), 8 U.S.C. § 1231(a), which controls the detention and removal of an alien subject to a final order of removal. Section 1231(a) provides that ordinarily, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). Since De La Teja has been found inadmissible under § 1182(a)(2) and is currently subject to the 90–day removal period, the Attorney General unquestionably has the authority to detain him, and indeed is statutorily required to do so. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.").
>
> Because the Attorney General no longer is acting pursuant to § 1226(c), it is unnecessary and altogether inappropriate for us to take up the question addressed by the district court—whether De La Teja's detention pursuant to that provision violates the Due Process Clause of the Fifth Amendment. *See Al Najjar,* 273 F.3d at 1339 (noting that the "case or controversy" requirement of Article III unambiguously forbids us from considering the question in the absence of a live dispute). Any opinion on the matter would be purely advisory in nature, and therefore this issue has become moot.

*De La Teja*, 321 F.3d at 1362-63 (emphasis in *De La Teja*; footnotes omitted). The

Court of Appeals observed: "It is only the 'vagaries of circumstance,' i.e., the fact

8

that a final order of removal has been entered, that prevents us from deciding the instant appeal." *De La Teja*, 321 F.3d at 1364.[4]

Unlike Mr. De La Teja, Mr. Arevalo-Guasco has pursued the appellate avenues available to him to challenge his removal from the United States. His challenge currently is before the Second Circuit Court of Appeals, putting Mr. Arevalo-Guasco in the same procedural posture as Mr. Rodriguez. Accordingly, Mr. Arevalo-Guasco currently is detained pursuant to § 1226, not § 1231.

The United States argues that the Eleventh Circuit's opinion in *Akinwale v. Ashcroft*, 287 F.3d 1050 (11th Cir. 2002), mandates a finding that Mr. Arevalo-Guasco currently is detained pursuant to § 1231. The United States misunderstands the procedural posture of *Akinwale*. The detainee in *Akinwale* was in the same position as Mr. De La Teja. Mr. Akinwale became subject to a final deportation order in 1997. *Akinwale v. Reno*, 216 F.3d 1273, 1275, 1279 (11th Cir. 2000) ("Akinwale's deportation proceedings began in January 1995, and his final deportation order was not entered until 1997."); *see also Akinwale v. Ashcroft*, 287 F.3d at 1051 ("Since October 3, 1997, [Mr. Akinwale] has been subject to a final

---

[4] Because the Eleventh Circuit determined that Mr. De La Teja's challenge to the constitutionality of § 1226(c) was moot, the Court of Appeals vacated the district court's holding that § 1226(c) does not violate the Due Process Clause of the Fifth Amendment. *De La Teja*, 321 F.3d at 1364. The Court of Appeals left that issue for another day when it could be litigated fully.

order of deportation.").[5] Consequently, Mr. Akinwale's detention, relative to his deportation proceedings, shifted from custody pursuant to § 1226 to custody

---

[5] In *Akinwale v. Reno*, the Eleventh Circuit Court of Appeals explained:

> Akinwale is a native and citizen of Nigeria. In September 1984, Akinwale lawfully entered the United States on an F–1, nonimmigrant visa. In May 1987, Akinwale was granted permanent resident status. In March 1993, Akinwale was convicted in state court of trafficking heroin and sentenced to twenty-five years' imprisonment. In January 1995, the Immigration and Naturalization Service ("INS") ordered Akinwale to show cause why he should not be deported based on his drug-trafficking conviction, which the INS characterized as an "aggravated felony" under § 101(a)(43) of the Immigration and Nationality Act (the "INA").
>
> At his deportation hearing on June 25, 1996, Akinwale, with counsel, conceded his deportability due to his conviction, but requested a waiver of deportation under INA § 212(c) (1994). The problem for Akinwale was that § 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996) ("AEDPA"), had amended INA § 212(c) to expand the types of felonies that rendered an alien ineligible for a waiver of deportation. At the June 25, 1996 hearing, the Immigration Judge ("IJ") found Akinwale deportable as charged. Due to his drug-trafficking conviction, the IJ also concluded that Akinwale was statutorily ineligible for a waiver of deportation under INA § 212(c), as amended by AEDPA § 440(d). Thus, the IJ denied Akinwale's § 212(c) request. Akinwale appealed.
>
> On March 10, 1997, the Board of Immigration Appeals ("BIA") affirmed the IJ's decision that Akinwale was statutorily ineligible for waiver of deportation under INA § 212(c), as amended by AEDPA § 440(d). The BIA also noted that Akinwale could move to have his proceedings reopened for the limited purpose of challenging the IJ's deportability determination under *Matter of Soriano,* Int. Dec. 3289, 1996 WL 426888 (A.G., Feb. 21, 1997).
>
> . . .
>
> Accordingly, on March 26, 1997, Akinwale requested the BIA to reopen his deportation proceedings. On April 11, 1997, the BIA granted Akinwale's request and remanded the proceedings to the IJ. On October 3, 1997, the IJ again found Akinwale deportable and ordered Akinwale deported to Nigeria. Akinwale did not appeal the IJ's second deportability determination to the BIA, and the time for such an appeal has expired. Thus, Akinwale's administrative proceedings are concluded,

10

pursuant to § 1231 as of 1997. Mr. Akinwale did not move into INS custody until two years later in November of 1999 when he was released from prison on state drug charges. At that point, the Attorney General began the process of removing Mr. Akinwale pursuant to his final order of deportation, and Mr. Akinwale's detention was mandatory under § 1231. In December of 1999, Mr. Akinwale moved for a stay of his deportation, and the Eleventh Circuit Court of Appeals granted his motion for stay. *Akinwale v. Ashcroft*, 287 F.3d at 1052, n. 4. That is why the Eleventh Circuit stay under § 1231 stopped the *Zadvydas* six-month clock. In short, Mr. Akinwale was not in custody pursuant to § 1226 when the Eleventh Circuit stayed his deportation proceedings.

In contrast, Mr. Arevalo-Guasco is and always has been detained pursuant to § 1226 because the removal order that the immigration judge issued for him is not final yet. Therefore, the Court must consider Mr. Arevalo-Guasco's habeas petition in the context of a § 1226 detention. Accordingly, the Court sustains Mr. Arevalo-Guasco's objection to the report and recommendation. If the United States wishes to address Mr. Arevalo-Guasco's habeas petition in the context of § 1226, it shall

---

and Akinwale remains subject to a final deportation order.

216 F.3d at 1274 (footnotes omitted).

11

file a brief within seven days.  Mr. Arevalo-Guasco shall have seven days to respond, if he wishes.

The Court denies Mr. Arevalo-Guasco's motion for preliminary injunction, (Doc. 22), and asks the Clerk of Court to please term Doc. 14.

**DONE** and **ORDERED** this March 2, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE